## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| ROGELIO BARAJAS,<br>BOP Reg. No. 22905-424,<br>　　　Movant, | MOTION TO VACATE<br>28 U.S.C. § 2255 |
| | CRIMINAL ACTION NO. |
| v. | 1:17-cr-0002-LMM-JKL-1 |
| UNITED STATES OF AMERICA,<br>　　　Respondent. | CIVIL ACTION NO.<br>1:19-cv-3752-LMM-JKL |

### FINAL REPORT AND RECOMMENDATION

Movant Rogelio Barajas, a federal prisoner currently confined in the Federal Correctional Institution Allenwood Low in Allenwood, Pennsylvania, has filed a *pro se* amended 28 U.S.C. § 2255 motion to vacate, challenging his 2018 guilty plea conviction and sentence in Case No. 1:17-cr-0002-LMM-JKL-1 for conspiracy to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). The matter is before the Court on the amended § 2255 motion and the government's response in opposition. For the reasons stated below, **IT IS RECOMMENDED** that the amended § 2255 motion be **DENIED**, and that no certificate of appealability issue.

## I.   PROCEDURAL HISTORY

On January 3, 2017, a federal grand jury indicted Movant for conspiring to possess with intent to distribute at least 50 grams of a mixture and substance containing methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A) ("Count 1").  (Doc. 13 at 1-2.)  Ultimately, on November 28, 2017, Movant entered an open guilty plea to Count 1 of the indictment.  (*See* Doc. 46.)

At the change-of-plea hearing, the District Court placed Movant under oath and informed him of the rights that he was waiving by pleading guilty, including the right to plead not guilty, the right to a trial by jury where he would be presumed innocent and the government would be required to prove his guilt beyond a reasonable doubt, the right to be represented by counsel at all times, the right to see, hear, and cross-examine witnesses, the right to elect to or decline to testify in his own defense, and the right to compel the attendance of witnesses to testify in his defense.  (Doc. 72 at 7-9.)  In each instance, Movant testified indicated that he understood.  (*Id.*)  The District Court reiterated that by pleading guilty, there would be no trial and Movant would give up the associated rights that it had just described, and Movant indicated that he understood.  (*Id.* at 9.)

2

The District Court then directed the government to identify the charge to which Movant was pleading guilty and the elements thereof.  (*Id.* at 10.)  The government's attorney stated that Movant was pleading guilty to one count of conspiracy to possess with intent to distribute at least 50 grams of methamphetamine, in violation of 21 U.S.C. §§ 841 and 846, and explained the elements of the offense that the government would be required to prove at trial.  (*Id.* at 10-11.)  Movant testified that he understood what he was being charged with and that he had no disagreements with the government's recitation of the charge and its elements.  (*Id.* at 11.)

The government then summarized the evidence that it would have presented at trial, including that Movant was a Mexico-based transportation coordinator who recruited truck drivers to deliver multi-kilogram quantities of methamphetamine from Texas to Atlanta, Georgia.  (*Id.* at 11-12.)  The case against Movant began in January 2016 when a traffic stop of a tractor trailer in Alabama led to the discovery of 70 pounds of liquid methamphetamine and $27,563 in U.S. currency.  (*Id.* at 12.)  The truck driver, now a cooperating defendant, informed law enforcement that Movant had provided him with the pick-up and dop-off locations, and that he had made approximately 10 deliveries over a two-year period.  (*Id.* at 12.)  DEA agents

3

used the cooperating defendant to make a controlled delivery of the liquid methamphetamine and monitored phone calls between the cooperating defendant and Movant regarding the drop-off location. (*Id.* at 12-13.) Law enforcement continued to monitor phone calls between the cooperating defendant and Movant, and, in March 2016, Movant arranged for the cooperating defendant to deliver another approximately 70 pounds of methamphetamine. (*Id.* at 13.) The cooperating defendant introduced Movant to an undercover officer posing as a truck driver who could transport loads of methamphetamine via tractor trailer. (*Id.*) Movant discussed future methamphetamine deliveries with the undercover officer, but, when Movant photographed the undercover officer, his driver's license, and his registration for the tractor trailer, law enforcement terminated the investigation and arrested Movant. (*Id.* at 13-14.)

The District Court asked Movant if there was anything he disagreed with in the government's factual basis, and Movant agreed that he was guilty of the offense charged, but objected to any implication that (1) he had ever recruited anyone besides the cooperating defendant and the undercover officer, and (2) that he was involved in any methamphetamine deliveries other than those that occurred in

4

January and March of 2016.  (*Id.* at 14-16.)  The government did not object to movant's clarification of the factual basis for his guilty plea.  (*Id.* at 16-17.)

The District Court then directed the government to inform Movant of the maximum penalties for the charged offense, and the government's attorney recited that Movant was subject to a statutory mandatory-minimum sentence of 10 years' imprisonment with a statutory maximum sentence of life imprisonment.  (*Id.* at 17.) Movant's attorney agreed that the government's statements about the mandatory minimum and maximum punishments were correct, and Movant testified that he understood that the Court could impose any legal sentence up to and including the statutory maximum.  (*Id.* at 17-18.)  Movant further testified that he understood that he could not withdraw his guilty plea if the sentence he received was higher than he anticipated, that the court could consider additional conduct at sentencing, and that he would be required to serve "nearly all" of the sentence imposed in prison. (Id. at 18.)

Turning to the Sentencing Guidelines, the District Court explained to Movant that (1) it would calculate and at least consider his final advisory guideline range, (2) that it was not possible to determine the final guideline range for his case until after the presentence report had been completed and he and the government

had an opportunity to challenge the facts and application of the guidelines recommended by the probation office, and (3) that the Court had the authority to impose a sentence that may be more or less severe than the sentence recommended by the Sentencing Guidelines. (*Id.* at 19.) In each instance, Movant testified that he understood. (*Id.*)

The Court then warned Movant that he was pleading guilty to a felony offense, which would deprive him of valuable civil rights such as the right to vote, to hold public office, to serve on a jury, to possess any kind of firearm, and to receive certain public benefits, and he indicated that he understood. (*Id.* at 20). The Court specifically asked Movant if anyone had "made any promises or representations to get [him] to plead guilty," and if anyone had "threatened, pressured, forced, or intimidated [him], or someone [he was] close to, to get [him] to give up [his] rights and plead guilty," and Movant answered "no, ma'am" to both questions. (*Id.* at 21.) Movant further testified that no one had made a promise to him as to what his actual sentence would be, that he had discussed his case with his attorney and was satisfied with his attorney's services, that he had no further questions, and that he was pleading guilty because he was, in fact, guilty. (*Id.* at 21-22.)

6

Movant then pled guilty to Count 1 of the indictment, and the District Court found that he was his plea was knowingly, voluntarily, and intelligently made with the assistance of competent counsel. (*Id.* at 23.) The Court further found that the plea was supported by a factual basis corresponding to each of the essential elements of the offense. (*Id.*) Accordingly, the Court accepted Movant's plea and adjudged him guilty. (*Id.*)

The United States Probation Office prepared a presentence investigation report ("PSR") which assessed Movant a base offense level of 38, pursuant to U.S.S.G. § 2D1.1(c)(1), because he was held accountable for 38.77 kilograms of methamphetamine (actual) or "ice". (Doc. 60 at 11.) The PSR applied a four-level enhancement under U.S.S.G. § 3B1.1(a) based on Movant's role as an organizer or leader in the criminal scheme, and a three-level reduction under U.S.S.G. § 3E1.1(a) and (b) for acceptance of responsibility, resulting in a total offense level of 39. (*Id.* at 13-14.) Based on a total offense level of 39 and criminal history category II, the PSR calculated Movant's guideline range at 292 to 365 months' imprisonment, and his guideline fine range as $50,000 to $10,000,000. (*Id.* at 18.)

Prior to sentencing, Movant objected that, although has base offense level was correctly calculated, the Guidelines overstated his role in the offense because

he did not know the nature or the quantity of the drugs involved.  (Doc. 53 at 5-6.)

Movant also objected to the aggravating role enhancement and requested a

mitigating role reduction, arguing that he was simply an intermediary between a

truck driver and other more culpable individuals, and that he had no role in planning

or organizing the deliveries and no decision-making authority with regards to the

deliveries.  (*Id.* at 6-10.)  Accordingly, Movant requested a downward variance to

a statutory-minimum 10-year sentence.  (*Id.* at 10-12.)

At sentencing, the government clarified that it believed a two-level role

enhancement was appropriate, rather than the four-level enhancement in the PSR.

(Doc. 70 at 2-3.)   After hearing arguments from the parties, the District Court

overruled Movant's objections and found that a two-level enhancement for

Movant's role in the offense was warranted.  (*Id.* at 7-10.)  As a result, the Court

determined that Movant's guideline range was 235 to 293 months' imprisonment

based on a total offense level of 37 and criminal history category II.  (*Id.* at 10.)

Following allocution, the District Court sentenced Movant to 204 months'

imprisonment.  (*Id.* at 15.)  The Court stated that it had considered the advisory

guidelines and the 18 U.S.C. § 3553(a) factors.  (*Id.* at 16, 18.)  The Court explained

that the sentence was appropriate because the case involved "an extremely large

8

amount of drugs," Movant was a "manager of this large organization," and based on Movant's "serious" criminal history, but that it had also considered that his role was limited to making phone calls, his age, and letters of support from his family. (*Id.* at 16-18.)   The District Court entered a final judgment consistent with the sentence orally pronounced at sentencing.  (Doc. 55.)

Movant appealed, arguing that (1) the District Court erred in applying a two-level aggravating role enhancement, (2) the District Court erred by failing to apply a mitigating role reduction, and (3) his sentence was substantively unreasonable because the District Court failed to adequately weigh his mitigating factors. (Doc. 56); *United States v. Barajas*, 753 F. App'x 838, 839 (11th Cir. 2018) (*per curiam*).   The Eleventh Circuit affirmed Movant's conviction and sentence. *Barajas*, 753 F. App'x at 843.   The instant § 2255 proceedings followed.

## II.   AMENDED 28 U.S.C. § 2255 MOTION

Congress enacted § 2255, authorizing convicted criminal defendants to file a motion to correct sentences that violate federal law, with the intention that the statute serve as the primary method of collateral attack on federally-imposed sentences. *United States v. Jordan*, 915 F.2d 622, 625 (11th Cir. 1990).   Pursuant to § 2255, individuals sentenced by a federal court can attack the sentence imposed

on four different grounds, including "that the sentence was imposed in violation of the Constitution or laws of the United States." *Id.*; *see also* 28 U.S.C. § 2255. "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). A § 2255 movant bears at all times the burden of proving his entitlement to relief. *Beeman v. United States*, 871 F.3d 1215, 1221-23 (11th Cir. 2017). An evidentiary hearing is not warranted if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *Fontaine v. United States*, 411 U.S. 213, 215 (1973).

### A.    Ground 1

In Ground 1 of the amended § 2255 motion, Movant argues that his guilty plea was not knowingly, voluntarily, or intelligently made due to the ineffective assistance of counsel. (Doc. 92 at 5.) Specifically, Movant asserts that his counsel did not discuss the charge against him or the elements of the charged offense and advised him to enter an open guilty plea to possessing with intent to distribute 50 grams of methamphetamine, despite there being no evidence that Movant was ever aware of the drug type or quantity. (*Id.*) Movant contends that, but for counsel's deficient performance, he could have moved for dismissal of the charges,

sought a negotiated plea, or proceeded to trial which would have resulted in a different outcome.  (*Id.* at 5-6.)

The government responds that Movant's plea colloquy establishes that he was aware of the nature and elements of the charges against him and that his plea complied with all requirements of Fed. R. Crim P. 11 and, thus, was knowingly and voluntarily made.  (Doc. 93 at 15-20.)  Consequently, the government argues that Movant has failed to show that his counsel's representation fell below an objective standard of reasonableness, or that he was prejudiced.  (*Id.* at 20.)

"Generally, a voluntary, unconditional guilty plea waives all nonjurisdictional defects in the proceedings."  *United States v. Patti*, 337 F.3d 1317, 1320 (11th Cir. 2003).  Thus, a defendant who enters a guilty plea can attack only "the voluntary and knowing nature of the plea."  *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992).  In order for a plea to be knowing and voluntary, the court accepting the plea must comply with Fed. R. Crim. P. 11, and, in particular, address three "core concerns" by ensuring that: (1) the guilty plea is voluntary and free from coercion; (2) the defendant understands the nature of the charges; and (3) the defendant knows and understands the consequences of his plea. *United States v. Bell*, 776 F.2d 965, 968 (11th Cir. 1985).  In evaluating the

knowingness and voluntariness of a plea, the representations of the defendant at the plea hearing, as well as any findings made by the judge accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Courts apply a "strong presumption" that statements made by a defendant during the plea colloquy are true. *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). Therefore, "when a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).

A defendant can overcome the otherwise voluntary and intelligent character of his guilty plea only if he can establish that the advice he received from counsel in relation to the plea was not within the range of competence demanded of attorneys in criminal cases, in violation of *Strickland v. Washington*, 466 U.S. 668 (1984). *Premo v. Moore*, 562 U.S. 115, 121, 126 (2011). To make a successful claim of ineffective assistance of counsel, a defendant must show both that (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. Deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the

'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*  In order to establish prejudice in the context of a guilty plea, a defendant must show that there is "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Premo*, 562 U.S. at 129 (quotations omitted).    Additionally, "[c]onclusory allegations of ineffective assistance are insufficient" to warrant habeas relief.   *Wilson*, 962 F.2d at 998 (quotation marks omitted).

As discussed in detail above, the District Court conducted a lengthy and thorough plea colloquy with Movant, satisfying the core concerns of Rule 11.  With respect to voluntariness and lack of coercion, Movant testified that he was not forced or coerced into pleading guilty, that no one had made any assurances or promises to secure his plea, and that he wished to plead guilty of his own volition. (Doc. 72 at 21.)  As to Movant's understanding of the nature of the charge, the government read the elements of the offense out loud on the record and recited the facts it expected to prove at trial.  (*Id.* at 10-14.)  Movant testified that he understood the charge and materially agreed that the government's factual basis was accurate. (*Id.* at 11, 14-16.)  Finally, as to Movant's knowledge of the consequences of his plea, the government accurately informed him of the mandatory-minimum and

13

maximum penalties he would face, and the Court explained in detail the rights he would give up and the collateral consequences of his guilty plea.  (Doc. 72 at 7-9, 17-18, 20.)  Movant testified repeatedly that he understood.  (*See id.*)  Movant's sworn statements made during the plea colloquy carry a strong presumption of truth, and Movant has not met his heavy burden of showing that they were false. *Medlock*, 12 F.3d at 187; *Rogers*, 848 F.2d at 168.

Thus, the record shows that Movant's guilty plea complied with the requirements of Rule 11 and was knowing and voluntary.  *Bell*, 776 F.2d at 968. Consequently, Movant's valid guilty plea waived any ineffective-assistance-of-counsel claim that occurred prior to the entry of his plea.  *Patti*, 337 F.3d at 1320.

Moreover, to the extent that Movant argues that he was unaware of the nature of elements of the charge against him, this claim is belied by the record.  As noted above, the government read the charge, the elements of the offense, and the factual basis into the record, and Movant testified that he understood the nature of the charge and its elements, and that the factual basis was materially accurate.  (*See* Doc. 72 at 10-16.)  Movant has not presented any evidence showing that his testimony was false.  *Medlock*, 12 F.3d at 187; *Rogers*, 848 F.2d at 168.  Under these circumstances, Movant has not shown that he was prejudiced by counsel's

14

allegedly deficient advice. *Strickland*, 466 U.S. at 687. Nor has Movant shown a reasonable probability that he would not have pled guilty but would have proceeded to trial. *Premo*, 562 U.S. at 129. Movant's bare assertions that he could have moved for dismissal of the charge, sought a negotiated plea, or proceeded to trial, without more, are conclusory and do not warrant relief. *Wilson*, 962 F.2d at 998; *see also Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (explaining that a petitioner is not entitled to federal habeas relief "when his claims are merely conclusory allegations"). Movant is not entitled to relief on Ground 1.

### B.    Ground 2

In Ground 2, Movant argues that his sentencing counsel was ineffective for failing to object based on *Alleyne v. United States*, 570 U.S. 99 (2013), that drug type and quantity are elements of the § 841 offense which must be found by a jury or admitted by the defendant, and, consequently, he could only be held responsible for sentencing purposes for the 50 grams of methamphetamine he pled guilty to possessing with intent to distribute. (Doc. 92 at 6.) Movant states that he could have received a sentence as short as 60 months, but, as a result of counsel's deficient performance, he was given a 204-month sentence based on impermissible judicial drug type and quantity findings. (*Id.*)

15

The government responds that Movant admitted in his plea colloquy that he was involved in deliveries totaling 140 pounds of methamphetamine and that the offense to which he pled guilty carries a ten-year mandatory minimum sentence. (Doc. 93 at 21.)  Accordingly, the government states that Movant's counsel was not ineffective for failing to raise meritless objections.  (*Id.* at 21-22.)

In *Alleyne*, the Supreme Court held that any fact that increases the applicable statutory mandatory-minimum sentence for a crime must be submitted to a jury and found beyond a reasonable doubt.  *Alleyne*, 570 U.S. at 115-16.  However, the Eleventh Circuit has held that, under the advisory guidelines scheme, the use of enhancements based on facts found by the sentencing court that were not admitted by the defendant nor found by the jury are constitutionally permissible and do not implicate the Sixth Amendment.  *See, e.g.*, *United States v. Charles*, 757 F.3d 1222, 1225 (11th Cir. 2014) ("Accordingly, [after *Alleyne*,] a district court may continue to make guidelines calculations based upon judicial fact findings and may enhance a sentence—so long as its findings do not increase the statutory maximum or minimum authorized by facts determined in a guilty plea or jury verdict."); *United States v. Garey*, 546 F.3d 1359, 1363 (11th Cir. 2008) (explaining that nothing in [*United States v. Booker*, 543 U.S. 220 (2005)] or its progeny prevents a district

court under the advisory guideline scheme from making factual findings regarding guideline enhancements).

Contrary to Movant's assertions, the Supreme Court's *Alleyne* decision has no effect on this case. The Sentencing Court's finding that Movant was responsible for 38.77 kilograms of methamphetamine (actual) or "ice" did not increase the statutory minimum or maximum penalties. Rather, Movant was subject to a minimum of 10 years' imprisonment and a maximum of life imprisonment based on his guilty plea to possessing with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). *See* 21 U.S.C. § 841(b)(1)(A)(viii). While the Sentencing Court's drug type and quantity findings did increase Movant's base offense level under the advisory Sentencing Guidelines, a guideline sentence is still constrained by statutory minimum and maximum penalties. Judicial fact findings that affect guidelines calculations only do not implicate *Alleyne*. *See Charles*, 757 F.3d at 1225; *Garey*, 546 F.3d at 1363. Because *Alleyne* was not implicated by the Sentencing Court's drug type and quantity determinations, Movant's counsel was not ineffective for failing to raise a meritless objection based on *Alleyne*. *See Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise non-

meritorious issues does not constitute ineffective assistance"). This claim is due to be denied.

## C.     Ground 3

In his third ground, Movant argues that his sentencing counsel was ineffective for failing to argue that there is no empirical data to support high-purity "methamphetamine (actual)" or "ice" being treated ten times as harshly as less-pure methamphetamine under the Sentencing Guidelines. (Doc. 92 at 6-7.) Movant notes that some district courts have adopted a policy that they will no longer treat ice differently than methamphetamine when imposing sentences. (*Id.* at 7.) Movant asserts that the sentencing court could have departed downward on policy grounds if counsel had presented this argument at sentencing. (*Id.* at 7-8.)

Construing Movant's claim as one that his counsel was ineffective for failing to object to the drug purity determination made in the PSR and adopted at sentencing, the government responds that the PSR set forth the empirical data regarding the purity of the methamphetamine underlying Movant's conviction and that Movant has not produced any evidence to counter the laboratory findings. (Doc. 93 at 22-23.) As a result, the government argues that Movant's counsel was not ineffective for failing to make meritless objections. (*Id.* at 23.)

The Sentencing Guidelines define "ice" as a mixture or substance containing d-methamphetamine hydrochloride of at least 80% purity.   U.S.S.G. § 2D1.1(c)(17)(C).   Under U.S.S.G. § 2D1.1(c), a quantity of "methamphetamine (actual)" or "ice" triggers the same base offense level as ten times as much methamphetamine.   *See* U.S.S.G. § 2D1.1(c)(1)-(17); *see also id.* comment. (n.8(D)) (providing that 1 gram of methamphetamine equals 2 kilograms of converted drug weight, while 1 gram of methamphetamine (actual) or ice equals 20 kilograms of converted drug weight for guideline calculation purposes).   The commentary to § 2D1.1 states that the Sentencing Guidelines take into consideration the purity of methamphetamine because:

> The purity of a controlled substance . . . may be relevant in the sentencing process because it is probative of the defendant's role or position in the chain of distribution.   Since controlled substances are often diluted and combined with other substances as they pass down the chain of distribution, the fact that a defendant is in possession of unusually pure narcotics may indicate a prominent role in the criminal enterprise and proximity to the source of the drugs.

U.S.S.G. § 2D1.1, comment. (n.27(C)).

Here, it is undisputed that Movant's base offense level was 38 based on his being held responsible for more than 4.5 kilograms of methamphetamine (actual) or ice.   (Doc. 60 at 11.).   To the extent that Movant claims that the ten-to-one sentencing disparity between ice and methamphetamine in § 2D1.1(c) lacks an

19

empirical justification, a "lack of empirical evidence does not render reliance on a guideline unreasonable." *United States v. Flores-Perez*, 749 F. App'x 793, 798-99 (11th Cir. 2018) (*per curiam*) (holding that sentencing court did not abuse its direction by failing to vary downward based on a policy disagreement with the methamphetamine guidelines).  While district courts possess the power to vary downward based on a policy disagreement with the applicable guideline, *Kimbrough v. United States*, 552 U.S. 85 (2007), they are not obligated to do so. *Dell v. United States*, 710 F.3d 1267, 1279 (11th Cir. 2013) ("*Kimbrough* empowered the district courts with this discretion, but it did not command them to exercise it.").  The decision whether to grant a downward variance is within the sentencing court's discretion, and it is "assume[d] the sentencing court properly understood its authority [to grant a downward departure or variance] absent a record indication to the contrary." *United States v. Burgos-Vasquez*, 784 F. App'x 663, 670-71 (11th Cir. 2019) (*per curiam*) (rejecting claim that the sentencing court abused its discretion by failing to vary downward based on the disparity between ice and less-pure forms of methamphetamine where nothing in the record indicated that the sentencing court believed it lacked the authority to vary downward from the applicable guideline).

20

Here, Movant has not identified any record indication that the Sentencing Court believed it lacked the authority to grant a downward variance, or that the Court was inclined to vary downward based on a policy disagreement with the methamphetamine guideline.   To the contrary, the District Court specifically informed Movant that it could sentence him above or below the advisory guidelines and did, in fact, vary downward from his 235- to 293-month guideline range. (Doc. 72 at 19; Doc. 70. at 15-18.)   Movant's unadorned assertion that "the court *could have* not applied" the higher base offense level for ice is entirely speculative. (Doc. 92 at 8) (emphasis added); *see also Tejada*, 941 F.2d at 1559.   As a result, Movant has not shown that he was prejudiced by counsel's failure to make a policy-based objection to the methamphetamine guideline.   This claim does not warrant relief.

Because Movant is not entitled to relief on any of the three grounds presented in the amended § 2255 motion, **IT IS RECOMMENDED** that the § 2255 motion be **DENIED**.

## III.   CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, "[t]he district court must issue or deny a certificate of appealability when it enters

a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Section 2253(c)(2) states that a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the [motion to vacate] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). Because reasonable jurists would not debate the resolution of the issues presented, **IT IS FURTHER RECOMMENDED** that a COA be **DENIED**. *See id.* If the District Court adopts this recommendation and denies a certificate of appealability, movant is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." 28 U.S.C. foll. § 2255, Rule 11(a).

22

## IV.   CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that the amended 28 U.S.C. § 2255 motion [92] be **DENIED** and that a certificate of appealability be **DENIED**.

The Clerk of Court is **DIRECTED** to terminate the referral to the undersigned United States Magistrate Judge.

**IT IS SO RECOMMENDED**, this 27th day of July, 2021.

_____

JOHN K. LARKINS III
United States Magistrate Judge